In the next case is Brandon Washington v. Attorney General of the State of Alabama. Kristen Nelson is here for the appellant Washington. Mark Stallett is here for the Attorney General and Ms. Nelson, you may begin when you're ready. Good morning. May it please the court. Brandon Washington is currently serving a sentence of life without the possibility of parole, even though the state agrees that it was willing to settle the case for 30 years at the time of his capital murder trial in 2006. Mr. Washington was just 18 years old at the time of his arrest, and a 30 year sentence would have guaranteed his release while he was still in his 40s. He unequivocally asserted in state post-conviction litigation that he would have accepted this offer if trial counsel had conveyed it to him. But the state courts denied relief, as did the federal district court. And no court has given Mr. Washington the opportunity to present evidence at an evidentiary hearing on this claim. Doesn't he have to demonstrate that the judge would have accepted the plea agreement? And he hasn't been able to demonstrate that. The judge says I would not have accepted that plea agreement because he maintained his innocence. And he rejected, what is it, life without parole. And so it seems like we're, do we have the power to revisit a credibility determination by the state without clear and convincing evidence to the contrary? There's a lot in that question, Your Honor. Let me unpack it a little bit. So, yes, there is. Yeah, he's got to show prejudice. He has to show prejudice. And he hasn't been able to show that. Well, he hasn't been given an opportunity to have a hearing to establish prejudice and to offer evidence on that point. But you are correct, Your Honor, that the state post-conviction court concluded that he had not established prejudice because he could not show a reasonable probability that he would have accepted the offer. Or that the court would have accepted the, allowed the plea agreement to go through based solely on the fact that he rejected a life offer at trial. So let's assume he would have accepted the offer. How do you get around the judge saying I would not have accepted the plea agreement? How do you get around that? So Fry makes two things clear about this point. First, that given the high percentage of criminal cases that resolve via plea agreement, judicial acceptance of a plea bargain is presumed and is the norm. But second, that the analysis here should not be difficult and must rely on clear, objective information in the record of, quote, a particular fact or intervening circumstance that would suffice to cause judicial non-approval of a plea bargain. So according to Fry, the relevant analysis is whether there's evidence of the kind of fact that would generally cause a court to reject a plea deal. This is not a test that's about the subjective tendencies or idiosyncrasies of a particular judge. And the federal district court misapprehended Fry when it concluded that it was basically powerless to second-guess the state trial judge's order on this point because she presided over Mr. Washington's trial. The only reason that the state court gives for concluding that Mr. Washington had not met his burden on this point is that he, quote, unquote, proclaimed his innocence while rejecting this life plea at trial. And that, the federal court is still required to assess the reasonableness of that reason. And that's an invalid basis on which to reject a plea. While trial courts in Alabama are not required to accept plea agreements, their discretion is cabined by the canon of judicial ethics and the Constitution. And so a trial court can't just reject a plea in a way that shows bias or vindictiveness, and it can't act in a way that burdens a defendant's constitutional rights. What if she agreed with the defendant that he was innocent? Could she refuse to take a plea, thinking perhaps he shouldn't be pleading guilty? He should go to trial and prove his innocence, especially since apparently the 30-year deal came because his lawyer did such a good job? Well, to the extent that that's what she was implying by her order, which I don't think that is what she was implying, but to the extent that she was implying that, while it is true that a trial court can reject a plea if there's not a sufficient factual basis for the plea, that is not a credible assertion for the state trial court to make here. This was a – while we don't – the record's a bit unclear as to when this 30-year offer was extended. It is clear that it was extended in the middle of trial. At that point, the judge had presided over pretrial hearings in the case. She had suppressed an inculpatory statement by Mr. Washington. She had heard evidence in the case that he had confessed to these murders to multiple people who were close to him who had no reason to lie. It's simply not credible for her to say that the reason that she wouldn't have accepted the plea because she had actual concerns about his innocence. She also sentenced him to death twice before he was ultimately resentenced to life without parole. Didn't Mr. Anthony, his lawyer, say, I communicated the offer to him? Did he say that? He – yes, he did. Boy, that's tough to get around there because why can't the court credit Anthony's testimony over Mr. Washington's? Well, so this goes to the deficient performance prong, Your Honor. And the reason that we can't credit Mr. Anthony's statement, first of all, Mr. Washington himself has never had the opportunity to testify on this point. So it's not a conflicting – we don't have conflicting testimony between the lawyer and the client. Okay. There was no evidentiary hearing. I understand that. So there was just affidavits. That's it, right? Correct. Okay. There were just affidavits. But there were three affidavits in this case. There was the affidavit of Emory Anthony, the affidavit of Mike Anderton, the district attorney, and also, and critically, the affidavit of Amanda Washington, Brandon Washington's grandmother. The state stipulated to the truth of that affidavit. And the affidavits between Amanda Washington's affidavit and Emory Anthony's affidavit conflict critically on this single point of what the nature of the plea offer was that was conveyed to Mr. Washington. Emory Anthony says the prosecution extended a 30-year offer, and I talked with Brandon and his grandmother. They both agree the grandmother was present, and Brandon decided that he didn't want to accept the plea. The grandmother also recalls a conversation about a plea offer with Mr. Anthony and herself and her grandson, and she says the offer was a life offer and that a 30-year offer was never conveyed during that conversation. During state post-conviction proceedings, the state stipulated to the truth of the contents of Amanda Washington's affidavit. And so this is not a case where we have dueling affidavits that the state post-conviction court or this court of criminal appeals could have just resolved the conflict between those affidavits based on credibility. The state stipulated to the truth of Amanda Washington's affidavit, and they are bound by that stipulation. And that's why we contend deficient performance has been established. Well, they didn't stipulate to the fact that it was a life offer as opposed to a 30-year offer, right? They stipulated to the contents. No. The state's position is that a 30-year offer was – that they extended a 30-year offer. They didn't actually stipulate to the truth of the entire affidavit. Yes. They stipulated to the contents that the contents of the affidavit were true. Did Mr. Washington attempt to submit his own affidavit at any point, or could he have? He was not given a fair opportunity to do so. The way that the state post-conviction proceedings played out, the only reason that he – he requested an evidentiary hearing multiple times. Then state post-conviction counsel became concerned because Amanda Washington was in poor health, and they didn't think that she was going to live to see an evidentiary hearing. And so they asked to depose her, and they attached an affidavit, her affidavit, to their request to depose her. Ultimately, that's how that agreement to the truth of the affidavit came about, because the state said we don't need to depose her. We will concede and stipulate to the contents of her affidavit being true. About seven months later, the state post-conviction court issued a very pointed order directing trial counsel for both the state and Mr. Washington to submit affidavits on the narrow question of whether a 30-year offer was actually extended. And then those attorneys did so, and then a number of months went by, and she ruled on the papers. So she never extended an opportunity, never made an open call for additional record evidence to be submitted by either party. So that we're clear, was there a request for an evidentiary hearing? Multiple requests for an evidentiary hearing, yes. Okay. Was there any evidence to suggest that there could have been a meeting where a plea offer was extended outside of the presence of the grandmother? No. Emory Anthony's affidavit is very clear on that point, that there was a conversation about the plea that took place with Brandon and his grandmother. So there is no support in the record for an idea that there was some other conversation about a plea outside of the grandmother's presence. Ms. Nelson, we'll hear from Mr. Starrett. May it please the Court. What we have here is a tale of three affidavits. We have a trial court judge who ruled over both the post-conviction proceedings and the trial proceedings, determining the credibility of the evidence that was before her. Under Rule 32.9 of Alabama Rules of Criminal Procedure, the trial court was able to conduct findings, to make findings, evidentiary findings, based on affidavits without conducting a hearing. Well, our precedent is pretty clear, isn't it? Madison v. The Alabama Department of Corrections, if there is a conflict and there is a request for an evidentiary hearing, the court is required to give the petitioner an evidentiary hearing. The court has held in Landers that the Rule 32 procedure, which was challenged in that case as denying due process, the court held that it is required to give deference to the state court's decision, regardless of whether it is just based on affidavits or not. But here... Well, that still doesn't get around Madison. If there is a conflict and the petitioner requests an evidentiary hearing, you got to have an evidentiary hearing. Well, under 32.9, the state courts were allowed, in Landers, the court was allowed to, the court was given deference as to its findings in a Rule 32 situation that was based on conflicting affidavits. Here, you have the affidavit of the prosecutor who stated that he had given, and just for some background, the way this came up, the state was responding to a Rule 32 petition that was claiming ineffective assistance. And the prosecution, the state, stated that not only was he not ineffective, was Mr. Anthony not ineffective, but he was so, he performed so well that we had made an offer in trial. The record shows that there was a life offer, an offer of life in trial, and that the defendant rejected it on the record. Now, the claim for... Well, he could have been the best lawyer in the world and done a fantastic job, but if there was an offer of life, you know, with 30 years, and it wasn't communicated to him, I mean, that's still ineffective assistance of counsel, isn't it? It would be under Loeffler and Frye if he met the other standards, which was that there has to be a plea offer made. They have to prove that there was a plea offer made. You have to prove that you would have accepted it, and you had to prove that the trial court would have accepted it. And in Alabama, of course, the state courts are given the power and authority to accept or reject a plea offer. Here, you had... Well, see, I'm a little troubled by the fact that the court, that the lower court said that I'm not going to accept it because he maintained his innocence. Don't you have a constitutional right to maintain your innocence? Doesn't the Constitution afford you the presumption of innocence? How can the court... You do, of course, Your Honor, but this court's held in Osley, Diaz, Smith, that it is a relevant consideration, and clearly he has the right to proclaim his innocence, but the court has held that in determining a Frye or Loeffler claim, that it is, as the court has said, a relevant consideration that makes it, quote, more difficult to accept a claim that someone would have accepted a plea deal when he insisted his innocence at trial. That would be true in almost every case before you have a plea deal. Absolutely. But the court's held that it is a relevant factor to be considered. What if the court... No, go ahead. What if the court had decided that he's not going to accept the plea agreement because he exercised his right to remain silent at the trial? Would that have been an appropriate reason to reject the... No, and Glywelyn wasn't that situation here, and I don't... Difference. What's the difference? They're both constitutional rights that you're entitled to maintain. You are, yes, sir. But the courts have held, and this court's held, that it is a consideration that can be taken into account when reviewing a claim like this. Do you have the state prosecutor who stated in his affidavit that he had made an offer of a term of years, and he was unsure as to the amount, but it was less than life. Then you have, and he's an experienced prosecutor, surely well-known by Judge Pulliam. You have Emory Anthony, who was the defense counsel, another well-known, long-established defense attorney, who stated specifically that he was given and communicated a 30-year offer to the defendant and his grandmother, in the grandmother's presence. Of course, we couldn't. I mean, he didn't have an opportunity to cross-examine him about that because the court just considered an affidavit. There was no evidentiary hearing, so his lawyer on post-conviction relief couldn't cross-examine him about whether or not that actually took place. Well, yes, sir. But here you had an evidentiary hearing that was requested. True. But he also had an opportunity to submit an affidavit with his amended petition, his amended claim, when he claimed that he had been denied the opportunity to consider this plea offer. And then... Well, the state habeas judge accepted the grandmother's affidavit as true. And the state court stipulated to that. Yeah. So the state judge should have credited her affidavit over Anthony's affidavit if he accepted, if she accepted the grandma's affidavit as true, right? But here's the issue, and it's a small, it's a small difference, but it is a difference. And I believe it is what the trial court relied on, and I think it's what the district court relied on. Ms. Washington's grandmother stated that she did not hear of this communicate, of this plea offer. This was the first time she learned of it was in these pleadings, and that she was sure that he would have communicated that offer to her. Now, we don't know the circumstances, whether she was part of the room where she didn't hear this. You know, obviously... Well, she says the first time when she submitted that affidavit, this is the first I had ever heard of a plea offer for 30 years. Right. And as far as, and the trial court was able to... That seems pretty definite to me. Well, and that she did not hear it, and we don't know exactly the circumstances. The court here was faced with these affidavits. That's why we need an evidentiary hearing, to flesh all that out. Well, Your Honor, here is... And the state court found that the offer was conveyed, despite the evidence from the grandmother, and the two attorneys having said the grandmother was in the room. So the state court doesn't explain how it could have made that finding, given what the meager evidence that was before the court. The grandmother didn't say, though, that she didn't, that there was no offer made. She said that she didn't hear of such an offer. She said she's sure that it would have been communicated to her. And I believe it's kind of telling here that I've not heard once from... And we've heard it in pleadings, but it just seems to me that in reviewing 2254, you know, the old standard was that the factual findings are presumed to be correct, unless it's not, unless the quote, the word was not fairly supported by the record. And that's 1995. 1996, you know, as of 1996, and obviously governed in this case, we have the presumption of correctness for the state court's findings, and that there is the burden of proving otherwise. It has to be by clear and convincing evidence. And it feels like to me that when I'm hearing from a petitioner, it's basically applying the old ADEPA, pre-ADEPA law, and if there's something in the record that would support their findings, then we should reverse. And that's just no longer the standard here. Further, when I hear, the court's been informed that he had, that the Washington had no ability to present testimony here. The trial court issued its request for these affidavits from the counsel and from the prosecution. Washington could have placed his own affidavit with his amended petition, or at that point, he could have filed it in response to the affidavits that were provided by the state prosecutor and for defense counsel. What he did instead was file a supplemental brief in support of Rule 32 petition. And he stated that all of the evidence in these proceedings, including the stipulated affidavit of Washington, Anthony, Anderson, the trial record supports his claim. Discussing the contents of these affidavits, not once submitting his own affidavit, not once stating that I didn't receive notice that this is the way this was going to go. I didn't know we were going to go under 32.9 and just receive, we're just going to be taking testimony through affidavits. I had no idea. I've got to give you a chance, Your Honor. No. But what he asked for was he asked the court to grant the petition, and he stated this was the extreme and rare case in which the unrebutted evidence, the objective trial record, states, conditions, and stipulations all compel the conclusion that defense counsel rendered ineffective assistance. Does he need an affidavit if he's relying on his verified petition? Well, and if he, and that is, he doesn't have to. He could have. And if he had other details that he wanted to give, if he had specific details and facts that he disagreed with from what he had read from the state's affidavit and from his own attorney's affidavit and from his grandmother's affidavit, he could have done so. Well, what else can he say except they didn't tell me and they didn't tell my grandmother? He could have. There's nothing mentioned about the grandmother. He could have talked more in detail about the grandmother. They stipulated to the grandmother. Yes, yes, ma'am. But that she did not, that the stipulation was to the correctness of the affidavit where she states that she did not hear of another, she didn't hear of another offer. It leaves open, and it's a narrow, it's a narrow line, that it left open the possibility under the trial court's review that there was that she did not hear. She's the elderly. The trial court was able to take its knowledge of the facts of the case that it had presided over, its knowledge of the prosecution and the defense attorney, in addition. There's nothing in the record about a 30-year plea agreement offer, right? No, ma'am, there is not. There is not. So all we have are the affidavits and the petition that is like an affidavit from the petitioner. And based on those things and under Rule 32.9, the trial court was able to make those factual determinations. Let me go back to prejudice before you sit down. The district court viewed the state court's finding about what the state court would have done as a credibility finding. But the only thing that the state court said was he proclaimed his innocence in open court. Now, we know it wasn't actually him. It was his lawyer who spoke up and said he's maintaining his innocence. So there are no hallmarks of a credibility determination there, it seems to me. The court doesn't speak in terms of demeanor or, you know, what he said, how he said it. So how can that be a credibility determination? Well, in that it had reviewed the affidavits and it had presided over the trial and it was personally aware of the prosecutor and the defense attorney and had seen the circumstances of being there when he actually refused the life offer. Well, the defendant didn't actually say anything, did he? No, ma'am, you're right, through counsel. But he refused the life offer and the trial court determined that under those circumstances that he had not proven that he would have accepted it nor that it would have accepted it, which is a whole other ballgame. But the 30-year offer is a better offer. So the fact that he rejected a less favorable offer, how can that tell us about what he would have done with a better offer? Well, the trial court noted that under the way that there is one major difference, and it's a difference, no doubt, but the difference between a life offer and a 30-year offer is an EOS, the end of sentence date that you would receive in a 30-year sentence. However, as far as parole and as far as correctional incentive time, good time, Yeah, I understand your argument about that, but there's no evidence that Mr. Washington knew that or that that was a consideration, is there? There's no evidence as to what he considered at all here other than his rejection of the life offer. But we don't believe that the petitioner is proven by clear and convincing evidence as is required under PI and under all of the other cases to show that the state court was incorrect or that habeas relief is due here. And there's no further questions we will ask, but we ask the court to affirm the denial of habeas relief here. Thank you. Thank you, Mr. Starr. Ms. Nelson, you've reserved some time. I'll start with the last thing that counsel said, which is this notion that we have to prove by clear and convincing evidence that the state court's factual findings were incorrect and his reference to PI. I think PI is distinguishable in several ways. First of all, there was an evidentiary hearing in state court in PI, and here we've had no opportunity to present evidence. And opposing counsel has failed to articulate or explain how we could prove by clear and convincing evidence anything without the opportunity to present any evidence. In addition, the relief in PI that was originally granted by the panel that was reversed by the en banc decision was a federal habeas grant. And I don't think one can read PI fairly to conclude that E1 needs to be satisfied in order to remand for an evidentiary hearing only, which is one of the things that we are asking the court to do, which would be an abundantly reasonable outcome here. Let's assume that you win and we remand it back. Who's going to conduct the evidentiary hearing? The federal district court. The federal district court's going to determine whether or not the state trial judge would have accepted the plea agreement? Well, on that point, Your Honor, again, I'm going to go back to the FRI standard that's articulated in FRI, which is objective evidence about the type of fact or intervening circumstance that would cause judicial nonapproval of a plea bargain. We would submit that on that point, there's not really any reason to develop the record further in terms of evidence. The court gives one reason. His protestations are so-called proclamations of innocence, which we contend are a mischaracterization of the record. That's not a valid basis to accept a plea. Once you knock out that illegitimate reason, there's nothing else left. There is no other fact or intervening circumstance in the record to suggest that a state trial court would not have accepted it. In fact, there's evidence to the contrary. His young age, his lack of criminal history, and the fact that, as opposing counsel pointed out, a very experienced prosecutor extended an offer of 30 years, which in and of itself suggests that that prosecutor believed that that was a reasonable plea to extend, the court would have accepted it. I don't think it's wise to interpret that prong of FRI or that component of the prejudice prong as articulated in FRI as something that rests on the subjective mindset of a particular state trial judge. Otherwise, we're going to have a situation where state trial judges are routinely turned into witnesses in state post-conviction proceedings, and that's not really what FRI contemplates. FRI clearly said that that aspect of prejudice should not be difficult to assess based on reasonable objective benchmarks in any particular case. But he couldn't go back and say, well, if there was a remand, we don't know what there's going to be. He couldn't go back and say, well, I now reject the 30 years, and I want to go to trial. The most that he could gain from prevailing on this appeal was 30 years of imprisonment, right? Correct. Okay. Correct. The ultimate remedy would be to order the state to re-extend the offer in this case, yes. On the point of the affidavits, the opposing counsel has adopted the position that the magistrate judge took, which was explicitly not adopted by the federal district court in terms of interpreting that affidavit to allow for the possibility that Amanda Washington, Mr. Washington's grandmother, was present. The 30-year offer was conveyed in her presence, but she just didn't hear it. There is absolutely no support in the record for that. She spent her life savings on this defense for her grandson, who was facing capital murder at trial. There's nothing to indicate that she had any sort of memory or attention problems. And, in fact, Emory Anthony's affidavit makes clear that he talked, quote-unquote, with Brandon and his grandmother, suggesting a conversation, not that she was just a passive participant. She says in her affidavit she's in pretty bad shape health-wise. Is she still around? No, she passed away, Your Honor. But that affidavit was taken years after the trial itself. There's nothing to indicate that she was in poor health during the trial proceedings themselves. And just on his point about the Rule 32.9, there is clear Alabama case law that indicates that before a judge is going to rule on the papers, they have to provide sufficient notice to the parties. And that simply didn't happen here. He's saying that Mr. Washington could have placed his own affidavit into the record or attached it to his amended Rule 32 petition. There was no requirement that he had to do so. All he had to do was meet his burden of pleading at that point, which he did by alleging facts which, if true, would have entitled him to relief. All right. We have your arguments. Thank you.